██████████████████████████████████

███████████████████████

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## (Bid Protest)

| | |
|---|---|
| HARPER CONSTRUCTION COMPANY, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> THE UNITED STATES, <br><br> *Defendant.* | Case No. _____ <br><br> Judge: _____ <br><br><br> ████████████████████ |

## COMPLAINT FOR DECLARATORY RELIEF AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiff, Harper Construction Company, Inc. ("Harper Construction"), by and through its undersigned attorneys, and for its Complaint against Defendant United States of America, Naval Facilities Engineering Systems Command, states as follows:

## NATURE OF THE ACTION

1. This protest arises from a Request for Proposal No. N6247324RF013 ("RFP" or "Solicitation"; **Exhibit A**, hereto) issued by the Naval Facilities Engineering Systems Command ("NAVFAC," the "Agency," or the "Government"), for the construction of a multi-story, reinforced cast-in-place concrete barracks at the Marine Corps Recruit Depot ("MCRD") located in San Diego, CA (the "Procurement").

2. The Agency committed reversable procurement error by issuing a Solicitation that mandates that otherwise responsible offerors enter into a Project Labor Agreement ("PLA") with a labor union and submit PLA documentation with its proposal as a condition of being eligible for award. *See* Exhibit A at 8, 17-19. This

makes the award conditioned upon a statutorily unauthorized socioeconomic set-aside in violation of the Competition in Contracting Act ("CICA"), 41 U.S.C. § 3301.

3. CICA requires that every federal contract procurement base the award on "full and open competition through the use of competitive procedures" unless a **statutory** exception to full and open competition exists. *See* 41 U.S.C. § 3301 *et seq.*

4. Because this Solicitation limits award to only those contractors who enter into a PLA with a labor union and submit PLA documentation with their proposals, the Solicitation violates CICA's statutory requirement that exceptions to full and open competition be authorized by Congress.

5. Specifically, the PLA mandate stems not from a Congressional statute but instead from Executive Order 14063, as implemented by Federal Acquisition Regulation ("FAR") clauses 52.222-33, and 52.222-34 (collectively, the "PLA Requirements"), all of which have the effect of setting-aside this competition for only those offerors who have entered into PLAs with labor unions and deeming offers from all others to be nonresponsive.[1]

6. It is well established that executive orders and FAR regulations that violate a statute, such as those in this Solicitation, are void and unenforceable. *E.g., Kentucky v. Biden,* 571 F. Supp. 3d 715, 726-27 (E.D. Ky. 2021) (enjoining the government from enforcing the executive order mandating vaccinations for federal

---

[1] The Solicitation directs offerors to "[r]eference provision 52.222-33, Notice of Requirement for Project Labor Agreement, and clause 52.222-34 Alternate II, Project Labor Agreement in section 16 of this RFP." Exhibit A at 8.

contractors because the order exceeded executive branch authority under the Federal Property and Administrative Services Act); *Georgia v. Pres. of the United States*, 46 F.4th 1283, 1295 (11th Cir. 2022) ("A presidential directive can stand only if those subordinate officials have the statutory authority that they are told to exercise.").

7. It is the judiciary's role to interpret statutes independent of influence from the executive branch's political and policy preferences. *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2268 (2024). The Court should carry out this task and reign in the executive branch's attempt to implement policy through a sweeping executive order that unlawfully prohibits a contract award to an otherwise responsible contractor who refuses to enter into a PLA with a labor union, because Congress has not passed a law authorizing this exception to CICA's statutory requirement for full and open competition.

8. The PLA Requirements substantially and unlawfully prevent otherwise qualified offerors, including Harper Construction, from receiving an award under this Solicitation solely if they do not enter into an agreement with a labor union and submit PLA documentation with their proposals, despite the lack of a statutory exception to CICA that would allow the government to set-aside this solicitation for only those offerors that enter into an agreement with a labor union.

9. The Agency's error tainted this Procurement when the Agency arbitrarily, capriciously, and unlawfully incorporated the PLA Requirements into the Solicitation and prejudiced Harper Construction, which is a California-based contractor who has successfully completed over $2.3 billion worth of federal

government construction contracts over 10 years.[2]  The PLA Requirements render the Solicitation unlawful, arbitrary, and capricious because they constitute a socioeconomic set-aside that lacks proper Congressional authorization.  *Cf.* 15 U.S.C. § 644; FAR Subpart 6.2.

10.  Through the instant protest, Harper Construction hereby challenges and seeks to void the unlawful PLA Requirements under the Solicitation.

## **PARTIES**

11.  Plaintiff Harper Construction has completed over 180 construction projects for the Federal Government, including projects like the one to be procured in the Solicitation, with high quality ratings as recognized in its CPARS ratings.[3]  In 2023, Harper Construction was listed in ENR Magazine's Top 300 largest contractors nationally and is currently listed as the 6th largest federal contractor in California.

12.  Defendant is the United States of America, acting through NAVFAC.

---

[2] Harper Construction has a demonstrated history of success constructing barracks facilities like the one contemplated by this Procurement.  Harper Construction has designed and constructed numerous Barracks and Bachelor Quarters ("BEQs") projects for various military agencies.  Harper Construction's resumé includes the successful completion of fifty-four (54) Military Barracks and BEQ projects collectively valued at over $1.57 Billion.  Harper Construction's most recent experience includes the new construction of a large-scale Barracks project at MCRD San Diego, Marine Recruitment Barracks Complex P-293, P-294, and P-316, Contract No. N62473-09-C-1205.

[3] ███████████████████████████████████████████████████████
████████████████████████████████████
  ▪ ████████████████████████████████████████████
  ▪ ██████████████████████████████████
  ▪ ████████████████████████████

████████████████████████████

████████████████████████

## **JURISDICTION**

13.     This Court has jurisdiction over the instant bid protest pursuant to the Tucker Act, 28 U.S.C. § 1491(b)(1). [4]

14.     The Pre-Filing Notice for this action was filed on September 27, 2024.

15.     Harper Construction has standing as an "interested party" because it is a prospective offeror who will submit a proposal in response to the Solicitation and whose direct interests will be affected by evaluation of proposals for and award of a contract in response to this Solicitation.

16.     Harper Construction is a responsible offeror with relevant financial, technical, and performance experience on other United States large construction contracts to qualify it to compete for and receive this best value award, based on the terms and conditions of the Solicitation.[5]

---

[4] Specifically, Harper Construction is challenging the Agency's "violation of statute or regulation in connection with a procurement or a proposed procurement." 41 U.S.C. § 1491(b)(1); *see Percipient.ai, Inc. v. United States, CACA, Inc.-Federal*, 104 F.4th 839, 851 (Fed. Cir. 2024) (holding that a protest fell within the jurisdiction of the Court of Federal Claims under the Tucker Act when the protester challenged the government's violations of a procurement statute). Accordingly, although the Solicitation concerns a Task Order, this Court has jurisdiction over this bid protest under the Tucker Act.

[5] Harper Construction does not believe the PLA Requirements are lawful and therefore does not believe they are valid Solicitation terms to determine if an offeror is either responsive or responsible. However, for purposes of standing in this Protest, and if this Court rejects Harper Construction's arguments, Harper Construction will enter into a PLA in order to submit its offer in response to this Solicitation. As such, there can be no argument by the Government that Harper Construction lacks standing based on its perceived inability to enter into a PLA. Similar to *Kentucky v. Biden*, this is a case of an improper and unlawful attempt by the Government to impose an unwanted and statutorily unauthorized socioeconomic policy on contractors in plain violation of CICA's full and open competition requirement. *See Kentucky v. Biden*, 571 F. Supp. 3d 715, 726-27 (E.D. Ky. 2021).

5

███████████████████████████████████

████████████████████████████

17. Harper Construction will be prejudiced without revision of the solicitation to remove the PLA Requirements because the Agency has improperly set aside this RFP based on a socioeconomic set-aside in a manner that: (i) lacks proper Congressional authorization and (ii) is arbitrary and capricious. The Solicitation threatens the integrity of the procurement process and, if permitted to proceed, will cause this contract to be awarded on the basis of an executive branch policy preference that is unsupported by an act of Congress. Because this would constitute a violation of CICA, this Procurement is unlawful and must be enjoined. *See Goodwill Industries of South Florida, Inc. v. United States*, 162 Fed. Cl. 160, 210–11 (2022) (explaining that the public interest is served when violations of law are enjoined when present in a solicitation).

18. This is not the first attempt by the Government to impermissibly impose sweeping mandates upon federal contractors by way of an Executive Order. Federal courts in recent years have rejected the Government's attempt to enforce a nationwide federal contractor vaccination mandate, and more recently, enjoined the President's attempt to set the minimum wage for federal contractors. *See Kentucky v. Biden*, 571 F. Supp. 3d 715 (E.D. Ky. 2021); *Georgia v. Pres. of the United States*, 46 F.4th 1283 (11th Cir. 2022); *Texas v. Biden*, 694 F. Supp. 3d 851 (S.D. Tex. 2023) (appeal filed).

19. The Agency's decision to include the PLA Requirements in the Solicitation imposes undue prejudice on Harper Construction. In order to be deemed eligible for an award under this Solicitation, Harper Construction must negotiate

████████████████████████████████████████

████████████████████████████████████

labor prices and work terms with one or more labor unions, which leaves these items largely outside of Harper Construction's control. Harper Construction thus cannot control pricing and labor terms that are central to the submission of its bid, which is highly prejudicial to its ability to submit a best value proposal based on what it believes are most likely to be the most competitive pricing, schedule, and other key work terms under the Solicitation. The Agency's attempt to condition Harper Construction's eligibility for award on socioeconomic labor union factors outside of Harper Construction's control is arbitrary and capricious and should be enjoined by this Court.

20. Harper Construction's competitive advantage in estimating and submitting proposals on procurements, such as this RFP, comes from its ability to deliver favorable pricing and work terms based solely on competitive market factors and not based on a closed, mandated market that limits labor pricing and work terms to labor unions.

21. This competitive advantage, based solely on full and open competition, is severely and unfairly prejudiced by the Solicitation's inclusion of the PLA, which unlawfully limits competition on key pricing and work terms solely to labor unions despite the lack of an exception to CICA by Congress to impose such a socioeconomic limit on full and open competition.

██████████████████████████████████████

████████████████████████████████

## STATEMENT OF FACTS

PLAs, E.O. 14063, and Implementing Regulations

22.     A PLA is "a pre-hire collective bargaining agreement with one or more labor organizations that establishes the terms and conditions of employment for a specific construction project." *See* FAR 52.222-34.

23.     In 2022, President Joe Biden issued E.O. 14063, Use of Project Labor Agreements for Federal Construction Projects 87 Fed. Reg. 7363 (Feb. 9, 2022), which mandates that executive agencies award contracts for large-scale construction projects only to contractors that are parties to a PLA.  The FAR Council promulgated a final rule to implement E.O. 14063, which requires that "every contractor and subcontractor engaged in construction on the project agree, for that project, to negotiate or become a party to a PLA with one or more labor organizations." *See* Use of Project Labor Agreements for Federal Construction Project, 88 Fed Reg. 88,723 (Dec. 22, 2023) (incorporated in 48 CFR Parts 1, 7, 22, 36, and 52); FAR 52.222-33 (Notice of Requirement for Project Labor Agreement); FAR 52.222-34 (Project Labor Agreement).

24.     The obligations imposed on contractors by E.O. 14063 and the final rules implementing E.O. 14063 ***do not have Congressional authorization***.  Instead, E.O. 14063 and the final rules implementing E.O. 14063 are executive branch policy initiatives that aim to advance socioeconomic set-aside interests, but which are unsupported by an act of Congress.

████████████████████████████

████████████████████

25.     Originating on October 23, 1992, President George H.W. Bush issued Executive Order 12818 to prohibit the use of PLAs on federal construction projects. President Bill Clinton then revoked Executive Order 12818 through Executive Order 12836 in 1993 and later encouraged the use of PLAs on such projects in 1997. *See* 58 Fed. Reg. 7045 (Feb. 1, 1993); *see also*, William J. Clinton, *Memorandum on Use of Project Labor Agreements for Federal Construction Projects* (June 5, 1997). President George W. Bush departed from his predecessor's policy and issued Executive Orders 13202 and 13208 in 2001 to implement a policy that neither mandated nor prohibited PLAs for federal construction projects. President Barack Obama revoked President Bush's policy and instituted a policy (similar to President Clinton's) that encouraged executive agencies to require the use of PLAs. *See* Executive Order 13502, Feb. 6, 2009. Then, in 2022, President Biden issued E.O. 14063 to mandate the use of PLAs on large-scale federal construction projects. President Biden's E.O. 14063 purports to go beyond the executive orders issued by either of President Clinton or Obama's policies, respectively, which merely encouraged the use of PLAs. E.O. 14063 purports to require otherwise responsible offerors to enter into a PLA with a labor union as a mandatory condition of award for large-scale federal construction projects.

26.     It is clear from the foregoing history that PLAs have long been the subject of executive policy making and debate over the efficacy of the policy. In other words, E.O. 14063 is an attempt to implement a sweeping socio-economic labor policy preference into federal procurements in a manner that is unsupported by Congressional authorization.

███████████████████████████████

████████████████████████

27.     The purported authority for incorporating the PLA Requirements in all large-scale federal construction procurements is set forth in "FAR Subchapter D – *Socioeconomic Programs*," (emphasis added) alongside various other socioeconomic programs that permit procurement preferences for certain classes of contractors. These preferences include those pursuant to the Small Business Administration's ("SBA") 8(a) Development Program, Historically Underutilized Business Zones ("HUBZone"), Service-Disabled Veteran Owned Small Business ("SDVOSB"), and Women-Owned Small Business ("WOSB"). Unlike the socioeconomic set-asides identified above, the PLA Requirements do not possess underlying statutory authorization the same way there is such authorization for SBA's procurement preferences provided in FAR Subchapter D. The purported authority for the PLA Requirements instead comes from E.O. 14063 and the regulations implementing the same, which have never been given Congressional approval, and are thus unlawful.

<u>The PLA Mandate Seeks to Unlawfully Impose a Disputed Socio-Economic Policy Preference on Full and Open Competition</u>

28.     In contrast to previous bid protests challenging PLA mandates and related APA legal challenges,[6] this protest does not seek to void the PLA

---

[6] *See e.g.,* Plaintiff's Complaint for Injunctive and Declaratory Relief, ECF 1, *Associated Builders and Contractors Florida First Coast Chapter v. Clark et al.,* No. 3:24-cv-00318 (M.D. Fl. Mar. 28, 2024); *Associated Gen. Contractors of Am., Inc. v. Fed. Acquisition Reg. Council, Civ. Action*, No. 6:24-cv-00037, 2024 WL 1078260 (W.D. La. Mar. 12, 2024). It is Harper Construction's understanding that bid protests have previously been lodged with the Government Accountability Office ("GAO") challenging PLA mandates in various solicitations. *See, e.g.*, Associated Builders and Contractors, *ABC Declares Victory As Federal Government Withdraws Project Labor Agreement* (Oct. 26, 2012), https://www.abc.org/News-Media/News-Releases/abc-declares-victory-as-federal-government-withdraws-project-labor-agreement. While there are no publicly available protest decisions, in one of the protests the Associated Builders and Contractors ("ABC") announced that the agency took corrective action, withdrawing the solicitation that included the PLA mandate when "the GAO

███████████████████████████████

████████████████████████████

Requirements through policy arguments concerning whether PLAs increase or decrease the price of construction to the government or increase or reduce the risk of labor disputes on large government construction projects. Instead, this protest identifies the legal flaw presented by the PLA Requirements: these requirements constitute a socio-economic labor policy preference that require the use of a labor union's work terms and conditions on a large government construction project, despite the fact that Congress has not authorized such a mandatory preference.[7]

29. Unless Congress creates an exception to full and open competition for PLAs, the imposition of a PLA mandate on a large-scale government construction project is unauthorized and violates CICA.

<u>The Solicitation and Its PLA Requirements</u>

30. The Agency issued the Solicitation on September 26, 2024, with an estimated magnitude of construction for this Project to be between $25,000,000 and $100,000,000. *See* Exhibit A at 7; **Exhibit B**. Proposals in response to the Solicitation are due no later than 2PM PST, November 14, 2024. Exhibit A at 3.

---

strongly indicated to the parties that it likely would sustain the contractors' protest under the federal Competition in Contracting Act…." *Id.*

[7] Not only has Congress failed to authorize the PLA mandate by enacting a statute to that effect, but when the Agency included the PLA Requirements in the Solicitation, it also failed to provide the required justification and approval ("J&A") and determination and findings ("D&F") that must accompany a procurement conducted using other than full and open competition. FAR 6.301(b); FAR 6.202. The Agency has thus failed to discharge its obligation to explain the estimated reduction in overall costs that flow from the PLA Requirements that unduly restrict competition in this Procurement. *See* FAR 6.202(b)(3); *Nat'l Gov. Servs., Inc. v. United States*, 923 F.3d 977, 989 (Fed. Cir. 2019). Such an assessment may "not be made on a class basis." FAR 6.202(b)(1).

████████████████████████████████████

████████████████████████████████

31. The Solicitation was issued as a Work Order under Planning Contract N62473-23-D-1012. *See* Exhibit B. The stated source selection was Best Value Tradeoff ("BVTO") for the award of a firm fixed-price contract (Base Item 0001), with three options for differential pricing terms pursuant to smaller, more discrete scopes of additional work (Option Items 0001-0003). Exhibit A at 1-2, 6. Moreover, the Solicitation stated that the Agency will make an award to "the ***responsible Offeror*** with the proposal determined to represent the best value—the proposal most advantageous to the Government, price and technical factor considered." Exhibit A at 6 (emphasis added).

32. Among the factors considered by the Agency is the presence of mandatory "Responsibility Determination Documentation" within each proposal, which includes documentation of an offerors' compliance with the PLA Requirements. Exhibit A at 8. For this Solicitation, a PLA is a "solicitation submittal requirement and shall be submitted within File #2 of the complete proposal." Exhibit A at 4, 8.

33. Specifically, regarding such "Responsibility Determination Documentation," the Solicitation states that "**Failure to provide a PLA, when required with the offer, will result in a proposal that is non-responsive and ineligible for contract award**." Exhibit A at 8 (emphasis added). Additionally, offerors must require their subcontractors to ultimately become parties to the required PLA. Exhibit A at 8. Offerors must submit the PLA in accordance with FAR Solicitation Provision 52.222-33 and FAR Clause 52.222-34 (Alternate II). Exhibit A at 8, 17-19.

████████████████████████████████████

████████████████████████████

34. In short, FAR 52.222-33, and 52.222-34 (Alternate II), unlawfully mandate that federal construction procurements with an estimated contract value over $35 million be procured from a specified source, namely, offerors who have entered into a PLA with a labor union. On this basis, the Government unlawfully imposed the mandatory terms of the PLA Requirements in the Solicitation.

35. The Solicitation, by its clear terms, mandates that offerors become parties to a PLA with a labor union. This requirement constitutes an unlawful creation of a socioeconomic procurement set-aside that lacks Congressional authorization. Congress possesses the authority to impose such a set-aside, but it has yet to do so. Unless and until Congress takes such action, the Agency is precluded from imposing sweeping policy mandates of this kind. *See e.g., Kentucky v. Biden*, 571 F. Supp. 3d 715, 726-27 (E.D. Ky. 2021) (finding that the vaccination mandate by Executive Order 14042 precluded otherwise best-value contractors from competing for contracts if they did not comply with the vaccine mandate, and that the Government could not "preclude full and open competition pursuant to [CICA] under these circumstances because the agency failed to follow the "congressionally designated procedure" for excluding unvaccinated contractors from competition.").

## COUNT I – DECLARATORY JUDGEMENT
**(The Mandatory PLA Requirements Violate CICA's Requirement for Full and Open Competition Without Proper Statutory Authorization)**

36. Harper Construction re-alleges and incorporates by reference herein Paragraphs 1–35 set forth above.

██████████████████████████████████

████████████████████████████

37. Under CICA, procuring agencies must "obtain full and open competition through the use of competitive procedures." 41 U.S.C. § 3301(a); FAR 6.101(b). An agency uses competitive procedures when it allows any responsible source to compete for a procurement. *PDS Consultants, Inc. v. United States*, 907 F.3d 1345, 1348 (Fed. Cir. 2018).

38. Notwithstanding the general rule favoring full and open competition, agencies may exclude certain sources from competition, restrict competition to small businesses, or employ one of several justifications to noncompetitive procedures. 41 U.S.C. §§ 3303, 3304(a)(1)-(7), & 3305. Possible exceptions to full and open competition include "a statute expressly authoriz[ing] or require[ing] that the procurement be made through another executive agency or from a specified source." 41 U.S.C § 3304(a)(5). In other words, if an agency seeks to employ noncompetitive procedures that are not provided in §§ 3303-3305 of the United States Code, such procedures must be "otherwise expressly authorized by statute." 41 U.S.C. § 3301(a).

39. The PLA Requirements mandate that federal construction procurements with an estimated contract value over $35 million be procured from a contractor who has entered into a PLA with a labor union (i.e., a specified source). However, there is no "statute [that] expressly authorizes" this exception from CICA's full and open competition requirement.

40. The PLA Requirements are contrary to the full and open competition mandate because they prejudice and disqualify otherwise responsible offerors who do

██████████████████████████████████████████

████████████████████████████████

not enter into a PLA with a labor union, despite the fact that based on their proposal they may otherwise be determined to be the best value offeror.

41.    It is the judiciary's duty to independently interpret statutes free of influence from executive branch policy objectives.  *See Loper Bright Enterprises*, 144 S. Ct. at 2268. ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences.").

42.    The PLA Requirements are unlawful, not authorized by statute, contrary to 41 U.S.C. § 3301(a), and should be removed from the Solicitation by this Court.  The Solicitation seeks to mandate the PLA Requirements in direct violation of CICA's requirement for full and open competition for which no statutory exception exists.

43.    The PLA Requirements constitute statutorily unauthorized socioeconomic set-asides that must be preliminarily and permanently enjoined by this Court.

### COUNT II DECLARATORY JUDGMENT
### (The Solicitation's PLA Requirements Are an Arbitrary and Capricious Unauthorized Socio-Economic Set-Aside in Violation of CICA)

44.    Harper Construction re-alleges and incorporates by reference herein Paragraphs 1–35 set forth above.

45.    The Solicitation states that award will be made "to the responsible Offeror with the proposal determined to represent the best value—the proposal most advantageous to the Government, price and technical factor considered."  Exhibit A at 6.

████████████████████████████████

████████████████████████████████

46. The Solicitation further states that PLA Responsibility Determination Documentation "shall be submitted within File #2 of the complete proposal," and that "[f]ailure to provide a PLA, when required with the offer, will result in a proposal that is non-responsive and ineligible for contract award." Exhibit A at 8.

47. The unduly restrictive and unlawful requirements imposed by the PLA Requirements create a statutorily unsupported socioeconomic set-aside that contradict and nullify the Solicitation's requirement for a competitive acquisition based on "best-value," and arbitrarily and capriciously mandates Harper Construction, an otherwise responsible offeror, to enter a PLA agreement with a labor union and submit PLA Responsibility Determination Documentation with its complete proposal in order to be considered eligible for award under this Solicitation.

48. An agency uses competitive procedures under CICA "when it permits *any responsible* source to compete for a procurement." *PDS Consultants*, 907 F.3d at 1348 (citation omitted) (emphasis added). The agency also uses competitive procedures "when it appropriately restricts competition to 'small business concerns,'" as authorized by Congress. *Id.* (citation omitted); *see e.g.*, 15 U.S.C. § 644. The FAR specifically "prescribes policies and procedures for providing for full and open competition after excluding one or more sources" to carry out this Congressional authorization and includes the following set-asides to full and open competition:

- FAR 6.203 (Set-asides for small business concerns);
- FAR 6.204 (Section 8(a) competition);
- FAR 6.205 (Set-asides for HUBZone small business concerns);

16

- FAR 6.206 (Set-asides for service-disabled veteran-owned small business (SDVOSB) concerns eligible under the SDVOSB Program);
- FAR 6.207 (Set-asides for economically disadvantaged women-owned small business (EDWOSB) concerns or women-owned small business (WOSB) concerns eligible under the WOSB Program); and
- FAR 6.208 (Set-asides for local firms during a major disaster or emergency).

FAR Subpart 6.2.

49. The PLA Requirements, however, do not have a "set-aside" designation under a statute, and therefore, are currently ineligible for set-asides to full and open competition under the FAR.

50. The PLA Requirements constitute congressionally unauthorized Socio-Economic Set-Asides (which do not exist in statute or FAR 6.2) and therefore, are violative of CICA's full and open competition requirements.

51. Notably, the FAR authority for PLAs is set forth in FAR Subchapter D's requirements on "Socioeconomic Programs" (FAR Subpart 22.5), while the "set-aside" procurement requirements are set forth in FAR Subchapter B's "Competition and Acquisition Planning" (FAR Subpart 6.2).

52. In order for the government to enforce the PLA Requirements without violating CICA's general requirement for full and open competition, Congress must first enact a statute authorizing set-aside procurements for PLAs, similar to the set-asides set forth under corresponding statutes and FAR Subpart 6.2.

██████████████████████████████████

█████████████████████████████████

53. The Court must hold that the statutorily unauthorized PLA Requirements are unlawful under CICA. *See Kentucky v. Biden*, 571 F. Supp. 3d 715, 726-27 (E.D. Ky. 2021) (holding unlawful President Biden's attempt to impose a sweeping vaccination policy mandate in federal procurements in violation of federal law); *Loper Bright Enterprises*, 144 S. Ct. at 2267 ("[T]o the extent that Congress and the Executive Branch may disagree with how the courts have performed [statutory interpretation] in a particular case, they are of course always free to act by revising the statute [at issue].").

54. The Agency's decision to include the PLA Requirements in the Solicitation was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.

55. The Agency acted in an arbitrary and capricious manner by mandating the inclusion of the PLA Requirements in this Solicitation and limiting eligibility for award under this Solicitation to only those offerors who enter a PLA, submit PLA documentation along with their complete proposals, and ultimately require their subcontractors to become parties to a PLA.

56. The purported authority for this requirement is set forth in FAR Subchapter D – Socioeconomic Programs – alongside various other socioeconomic programs (i.e., SBA's 8(a) Development Program, HUBZone, SDVOSB, and WOSB) that permit procurement preferences for certain classes of contractors. Unlike the other procurement preferences set forth in this FAR Subchapter (i.e., SBA's 8(a) Development Program, HUBZone, SDVOSB, and WOSB), the PLA Requirements do

not possess underlying statutory authorization in FAR Subchapter B's "Competition and Acquisition Planning" (FAR Subpart 6.2).

57. The authority for the PLA Requirements instead comes from E.O. 14063, which has never been given a Congressional approval and is thus unlawful. *See e.g., Distrib. Sol., Inc. v. United States*, 104 Fed. Cl. 368 (2012) (rejecting an attempt by the Government to circumvent competitive procurement procedures because the Government lacked proper Congressional authorization).

58. In light of these facts, restricting the pool of qualified offerors to those who are parties to a PLA with a labor union and submit PLA documentation with their complete proposals, despite lacking Congressional authorization, is an act that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law. A procurement decision is arbitrary and capricious where the procurement official's decision lacks a rational basis or the procurement procedure involves a violation of regulation or procedure. *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 n.5 (Fed. Cir. 2001). Here, the Government lacks any rational basis to include the PLA Requirements in the Solicitation, and its inclusion of the PLA Requirements violates procurement law.

59. The PLA Requirements constitute an unauthorized socioeconomic set-asides that must be preliminarily and permanently enjoined as arbitrary and capricious by this Court.

## BASIS FOR INJUNCTIVE RELIEF

60.     Absent an injunction, Harper Construction will be irreparably harmed because Harper Construction will be subject to a Solicitation that violates procurement law by imposing unlawful and statutorily unauthorized socioeconomic set-asides that violate federal law and severely prejudices Harper Construction's ability to rely on its open-market competitive experience to propose its most competitive pricing and work terms in response to the Solicitation.

61.     The Agency violated CICA's requirement for full and open competition when it arbitrarily and capriciously incorporated statutorily unauthorized socioeconomic set-aside PLA Requirements in the Solicitation.

62.     The Agency will not be harmed by this injunction because the Agency will benefit from correcting its procurement errors and curing the violation of procurement law by removing the PLA Requirements from the Solicitation and thereby facilitating lawful competition among all offerors, which will allow the Agency to receive the best value for this procurement.

63.     The public interest will be served by injunctive relief because the Agency violated federal statutes and regulations and its actions threaten the integrity of the procurement process. *See Goodwill Industries of South Florida, Inc. v. United States*, 162 Fed. Cl. 160, 210-11 (2022).

## RELIEF REQUESTED

WHEREFORE, Harper Construction requests that the Court grant the following relief:

███████████████████████████████

████████████████████████

a. Issue a temporary restraining order, preliminary injunction, and permanent injunction issued on an expedited basis requiring the Agency to stay the Procurement process for the Solicitation pending the outcome of this Protest;

b. Issue a declaratory judgement that the Agency's inclusion in the Solicitation of statutorily unauthorized socioeconomic set-asides in the form of the PLA Requirements violates CICA and is arbitrary, capricious, or otherwise an abuse of discretion;

c. Issue a permanent injunction and order that the Agency remove and/or void the PLA Requirements from the Solicitation; and/or

d. Such other relief as the Court deems just and proper.

Submitted this 30th day of September, 2024

/s/ Dirk D. Haire
Dirk D. Haire
Joseph L. Cohen
Payum Sean Milani-nia
David Timm
Jung Hyoun Han
Michael J. Brewer
**FOX ROTHSCHILD LLP**
2020 K Street, NW, Suite 500
Washington, DC 20006
Phone: (202) 461-3114
Fax: (202) 461-3102
dhaire@foxrothschild.com

*Attorneys for Harper Construction Company, Inc.*

21